from William Bay, that recites a consideration that, so far as appears, was full and adequate. The rule applicable to cases of this kind is stated by the court of appeals in Kirsch v. Tozier, 143 N. Y. 397, 38 N. E. 377, as follows:

"What circumstances will amount to constructive notice or will put a party upon inquiry is in many cases a question of much difficulty. A purchaser is not required to use the utmost circumspection. He is bound to act as an ordinarily prudent and careful man would do under the circumstances. He cannot act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of inquiry is naturally suggested by circumstances known to him."

Applying the rule so laid down to this case, we are of the opinion that, so far as this particular piece of property is concerned, plaintiff is protected; and the judgment of the court below should be affirmed, with costs.

KELLOGG, J., concurs; PARKER, P. J., and SMITH, J., in result.

---

(59 App. Div. 270.)

### NATIONAL COMMERCIAL BANK OF ALBANY v. LACKAWANNA TRANSP. CO.

(Supreme Court, Appellate Division, Third Department. March 6, 1901.)

1. CARRIERS—BILL OF LADING—FAILURE TO TAKE UP BILL—FRAUD—CONVERSION—LIABILITY OF CARRIER.

Where a carrier issues a bill of lading which requires it to take up such bill on the delivery of the goods, but it delivers the goods on the order of the consignee, without taking up the bill, which is afterwards assigned to plaintiff for a valuable consideration, plaintiff cannot recover from the carrier for a conversion of the goods, since the bill when received by the plaintiff was a spent bill, and did not operate to pass title to the goods.

2. SAME—PLEADING—VARIANCE.

Where the assignee of a bill of lading sues the carrier for the conversion of the goods, which was alleged to have occurred after transfer of the bill, but the proof shows that the goods were delivered to the order of the consignee before the bill was delivered to plaintiff, he cannot recover on the ground that the carrier violated its contract in failing to take up the bill of lading as required, since a recovery must be based on the cause of action alleged in the complaint.

3. SAME.

An application for findings of fact and law in harmony with the theory that plaintiff is entitled to recover for such breach of contract, made after the final submission of the cause, and without amending the complaint, will not authorize a recovery on such theory.

Appeal from trial term, Albany county.

Action of conversion by the National Commercial Bank of Albany against the Lackawanna Transportation Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The facts as they appeared upon the trial of this case are substantially as follows: In October, 1891, Counselman & Co., at Chicago, shipped by the defendant's line to Buffalo 50,000 bushels of oats, for which it took a bill of lading. Such bill contained a provision that, when the goods were consigned in a certain specified form, the bill should be surrendered to the carrier upon the delivery of the goods. It may be conceded that this bill required a sur-

render of the goods when delivery was made. The oats were consigned to the order of Counselman & Co., and such bill of lading, indorsed in blank by them, was sent annexed to their draft on E. Gallagher for the price of the oats, to the Marine Bank of Buffalo. When the oats arrived in Buffalo, that bank held the bill of lading as security for such draft, and the defendant delivered the oats to it, but did not take up the bill of lading. Gallagher, acting for the Ft. Orange Milling Company of Albany, subsequently paid the draft, and took the bill of lading and the oats, and delivered them to the milling company. The oats were delivered to the Marine Bank on or about November 6, 1891. On November 23, 1891, such milling company transferred such bill to this plaintiff as security for a debt of some $15,000 then due to it, and the plaintiff in exchange therefor surrendered valuable securities which it held in pledge for the same debt. The plaintiff discovered in February, 1892, that the oats had been delivered to the Marine Bank, and by it to the milling company, before the said transfer of the bill of lading to it, and that such milling company had perpetrated a fraud upon it by inducing it to take such bill. Subsequently, in October, 1897, it demanded the oats from this defendant, and produced and offered to surrender to it the bill of lading in question. Upon the defendant's refusal to deliver the same, it brought this action for their conversion. On the trial the complaint was dismissed upon the merits, and from such judgment of dismissal this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

A. & W. Lansing (John M. Bowers, William Lansing, and Latham G. Reed, of counsel), for appellant.

Rogers, Locke & Milburn (John G. Milburn and James McC. Mitchell, of counsel), for respondent.

PARKER, P. J.   We concur in the conclusion reached by the trial court,—that the plaintiff could not maintain an action against the defendant for a conversion of the oats. The Marine Bank was the holder of the bill of lading and the owner of the oats when the defendant delivered them to it. It was the party to whom the defendant, by its contract in the bill of lading, had undertaken to deliver them, and upon such delivery the functions of such bill of lading ceased. Thereafter it was a "spent" bill, and could not be operative to transfer the title of the oats to any one. 4 Am. & Eng. Enc. Law, pp. 548, 549; Colgate v. Pennsylvania Co., 31 Hun, 300. And this is so although the defendant had violated a part of its contract contained therein, by not requiring its surrender when it delivered the oats. Notwithstanding that neglect, the bank was none the less the rightful owner of the oats and entitled to their possession, and the bill of lading could never thereafter operate to deprive it of such rights. Thus, the delivery of the oats to the rightful owner was not a conversion of them by the defendant; and the plaintiff, which then had no interest whatever in them, had no just complaint against it for so doing. And inasmuch as the plaintiff, by the assignment to it of the bill of lading, acquired no title whatever to the oats therein mentioned, it has never obtained any right to demand the possession thereof from the defendant. The facts, therefore, do not sustain an action against the defendant for converting its property.

The precise ground of complaint which the plaintiff now makes against the defendant is not that it delivered the property to the Marine Bank, but that it neglected to take up the bill of lading when

it made such delivery. It argues that the provision in such bill to the effect that it would do so was a contract with all those to whom it might thereafter come that the defendant would retain the oats, and hold them ready to be delivered to whomever should produce and surrender the bill; that by the breach of that contract the plaintiff has been induced to take a spent and worthless bill of lading, instead of a transfer of the oats, which, under the defendant's contract, it naturally supposed it was acquiring; and that an action lies against the defendant for the damages so sustained. It also further argues that such provision was at least a representation to whomsoever the bill might thereafter come that the defendant still held the oats, and would do so so long as the bill was outstanding, and that thus it is analogous to the case where a common carrier issues a bill of lading for goods that have never been put into its custody or possession; and it claims that it may recover against the defendant for leaving this bill of lading outstanding after the goods were delivered, upon the same principles that would allow it to recover against a carrier who issued a fictitious bill of lading. Griswold v. Haven, 25 N. Y. 595. It further claims that the leaving of such bill of lading outstanding after having delivered the oats was a direct violation of section 633 of the Penal Code, and that therefore an action arose to the plaintiff for the damages caused thereby. These claims present a very serious question whether the defendant, by its neglect to take up the bill of lading, did not incur a liability to the plaintiff for the losses sustained by reason of its reliance upon the provision referred to. But we are not able to see how such question can be made available to this plaintiff in this action, and much less can we see how it is to avail it on this appeal. It is very clear that this action is one for the conversion by the defendant of the plaintiff's property, and for that only. But two facts appear in the complaint which bear at all upon the claim now made,—one, the fact, appearing in a copy of the bill of lading, that the defendant undertook to take up the bill upon delivery of the oats; the other, that prior to the plaintiff's demand the defendant had delivered the oats to another party without the plaintiff's knowledge and without a surrender of such bill. But there is no averment in the complaint, nor does it appear therefrom, that such delivery was before the bill of lading had been assigned to the plaintiff, nor that the plaintiff, by reason of the defendant's neglect to take it up, had suffered any injury whatever. On the contrary, it would appear therefrom that the bill had regularly come in due course of business into the plaintiff's ownership and possession, before the delivery of the oats, and, instead of being a spent and worthless bill, that it was one operative to transfer to the plaintiff the title to the oats. The complaint contains no suggestion that the defendant has done any act causing injury to the plaintiff, save that it has unlawfully refused to deliver up the oats when demanded, and had prior to that time converted them to its own use by an unauthorized delivery to another without plaintiff's knowledge or consent. The whole theory of the complaint is that the plaintiff had acquired title to the oats through the bill of lading, and that the defendant had unlawfully converted the plain-

tiff's property so acquired. That was the sole issue which the defendant was called upon to meet at the trial, and that was the sole theory upon which the plaintiff tried and rested its case. The facts upon which the plaintiff would now establish a cause of action are facts proven by the defendant to defeat the one upon which the plaintiff's complaint is based. They are facts which are not set forth in such complaint, and which would not have been admissible as a cause of action under it; and, if from such facts any cause of action whatever accrues to the plaintiff, it is one which differs in its entire scope and meaning from the one therein contained. The request of the plaintiff, after the case had been finally submitted, that the trial judge find certain questions of fact and conclusions of law in harmony with the claim it now makes, does not alter the situation. No application was made to amend the complaint so that it would conform to the new facts upon which the new claim was based; and had the trial judge rendered a judgment for the plaintiff, based upon such new facts, it would evidently have been for a cause of action which had never been presented to the defendant, and concerning which it had never been heard. It is a familiar rule that "a party coming into court asserting one cause of action cannot recover on another and different one." Reed v. McConnell, 133 N. Y. 426, 434, 31 N. E. 22; Southwick v. Bank, 84 N. Y. 420; Romeyn v. Sickles, 108 N. Y. 650, 652, 15 N. E. 698; Terry v. Munger, 121 N. Y. 171, 24 N. E. 272, 8 L. R. A. 216. Upon the facts as they were established by the defendant, it did not convert any of the plaintiff's oats. Whether the defendant was estopped from proving any of those facts is a question that was not raised upon the trial. The evidence to establish them was admitted without objection, and therefore it was properly considered by the trial judge, and must be considered here. That the facts established utterly defeated the plaintiff's claim, as set forth in his complaint, we think there can be no doubt.

The trial judge passed only upon the cause of action set up in the complaint, and upon that we think his decision was correct. We do not examine, therefore, as to the correctness of the claim now made, —that from the whole evidence in the case a cause of action appears against the defendant. The judgment which the trial court rendered was a correct one, and should be affirmed.

Judgment affirmed, with costs. All concur.